# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIYA GELETA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11 CV 6567 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| MEIJER, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment [42], filed by Defendants Meijer, Inc., Meijer Great Lakes Limited Partnership ("MGLLP"), and Meijer Stores Limited Partnership ("MSLP") (collectively referred to as "Meijer"). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion for summary judgment [42]. This case is set for further status hearing on 1/22/2014 at 9:00 a.m.

## I.  Background

### A.  Procedural Background

On August 23, 2011, Plaintiff Mariya Geleta filed this case against Meijer, Inc. Her original complaint mistakenly alleged that Defendant Meijer, Inc. "owned, operated, managed, maintained, and controlled" the grocery store where Plaintiff allegedly slipped and fell. Two years later, Plaintiff sought to add Meijer Great Lakes Limited Partnership ("MGLLP") and Meijer Stores Limited Partnership ("MSLP") as defendants pursuant to Rule 15, alleging that MGLLP is the operating agent and MSLP is the owner of the Meijer facility at issue. The Court determined that Plaintiff satisfied the Rule 15(c) requirement for "relation back" of the proposed amendments and demonstrated good cause for seeking a late amendment to the pleadings and

thus gave Plaintiff leave to a file a second amended complaint naming all three Defendants.

Plaintiffs' complaint asserts a single cause of action – negligence – against Defendants Meijer, Inc., MGLLP, and MSLP. Defendants answered, denying the negligence of all three entities and admitting that MSLP owned the property in question and employed the daytime Meijer team members and further admitting that MGLLP operated, managed, controlled, and maintained the premises.

### B. Facts

On May 15, 2010, Plaintiff visited a Meijer grocery store in Niles, Illinois with her son, Val, and her friend, Mykola Zhmundalyk. The evidence in the record indicates that the customer traffic that day was steady. As they shopped in the store, Plaintiff walked ahead of Val and Mykola, who pushed the cart. At some point, Plaintiff slipped and fell. Plaintiff does not recall what part of the store she was in when the incident occurred, but believes that she was walking toward the chicken products at the time. The record establishes that Plaintiff was in the bakery when she fell and that the area where she fell was well lit. Although she did not look at the floor before the incident, Plaintiff admits that if she had looked, nothing was hiding the substance on the floor. However, Plaintiff noted that there was a table near where she fell, presumably obscuring a portion of the floor.

According to Plaintiff, the area where she fell had a white or off-white tile. Plaintiff testified that the substance she slipped on was dark brown or black in color. The record is disputed as to how large of an area the substance covered, but Plaintiff testified that it was approximately two hand lengths long and one hand length wide.[1] Plaintiff testified that after she

---

[1] Mykola Zhmundalyk testified that the substance was four to five hand lengths long and wide and so big he would have expected someone to see it and clean it up. Harshish Patel, the employee who cleaned up the substance, testified that the substance was no more than four inches by four inches, but that the area that he cleaned was between five to six feet in diameter due to foot and cart traffic through the substance.

fell, she did not speak with anyone at the Meijer regarding how long the substance had been on the floor, what it was, where it came from, or how long it had been there. However, she testified that she believed the substance to be a sweet-smelling bakery product.

On the day of the incident, Breanne Cichanski was working the mid-day shift in bakery section. She testified that she was the only person in the bakery for approximately two to three hours prior to the Plaintiff's fall. To the best of Ms. Cichanski's recollection, the fall occurred around 3:40 p.m. At that time, Cichanski she was standing at one of the bakery tables on the bakery floor writing in a daily planner. Ms. Cichanski felt a bump against the table, looked up and saw Mykola standing there, and then looked down and saw Plaintiff on the floor amidst a "mess." There is testimony in the record that the "mess" was bread or cake products, "feces," or "poo." The record is undisputed that the substance was brown or at least dark in color. Karl Kiegerl, the manager on duty at the time, testified that an employee told him that the substance was a brown, muffin-like substance; in the official Meijer incident report, Kiegerl described the substance as a brown muffin.

On the day of the incident, there was a muffin "cart" or "case" in the bakery. Customers could select individual muffins from the cart. If a customer wanted a glaze or topping on the muffin, an employee would take the muffin out of its container, drizzle the glaze or topping on the muffin, and then replace the muffin in its container.

Pursuant to the policy of the store, it was Cichanski's responsibility at the start of and throughout her shift to walk the bakery floor area to check the stock and to make sure the floors were clean. Ms. Cichanski estimated that she inspected the floor where Ms. Geleta claims to have fallen approximately 20 minutes prior to the fall and at that time she saw nothing on the floor. However, she also testified that when she left the kitchen portion of the bakery to go out

3

onto the floor, she "did not check the floor before I went back out."[2] Chichanski also testified that there wasn't anything sold in the bakery that looked like what she saw on that floor; however, the Meijer incident report identified the substance as a brown muffin.

## II. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). On cross-motions for summary judgment, the Court construes all facts and inferences "in favor of the party against whom the motion under consideration is made." *In re. United Air Lines, Inc.,* 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs., Inc.,* 394 F.3d 530, 536 (7th Cir. 2005)); see also *Gross v. PPG Industries, Inc.*, 636 F.3d 884, 888 (7th Cir. 2011); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the

---

[2] Cichanski's timeline on the day in question is at odds with certain aspects of her testimony.

opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

**III. Analysis**

Plaintiff's complaint alleges a single count of common law negligence against all Defendants. The parties agree that Illinois law governs this diversity case. "In order to prevail in an action for negligence, the plaintiff must prove that the defendant owed a duty, that defendant breached that duty, and that defendant's breach was the proximate cause of injury to the plaintiff." *Am. Nat'l Bank & Trust Co. of Chicago v. Nat'l Adver. Co.,* 594 N.E.2d 313, 318 (Ill. 1992).

**A. Liability of Meijer, Inc.**

Even though Plaintiff's second amended complaint states that it is brought pursuant to a theory of ordinary negligence, the complaint sets forth the elements for a premises liability claim. In Illinois, such actions are brought pursuant to the Illinois Premises Liability Act, 740 ILCS 130/2 (hereinafter the "Premises Liability Act"). The Premises Liability Act sets forth the duties owed by a landowner, or the possessor of land, to anyone who enters the property. Regardless of whether Plaintiff's claims against Meijer, Inc. are examined under a theory of premises liability or ordinary negligence, Plaintiff must first prove that Meijer, Inc. was the owner or possessor of the premises in order to establish a duty against this entity. If Meijer, Inc. was neither the owner nor possessor of the property, then it could not owe a duty of care to Plaintiff while she was on the property.

In its answer to the pleadings and discovery responses, Meijer, Inc. has stated clearly that it neither owned nor operated the premises in question. In turn, Plaintiff has elicited no facts or testimony to dispute Meijer, Inc.'s denial that it owned or operated the store in question. In

addition, Defendant Meijer, Inc. identified MSLP as the owner of the premises and MSLP has admitted ownership in the answer to the second amended complaint. Furthermore, Defendant MGLLP has been identified as the entity that operated, controlled, managed and maintained the store in question and has admitted the same in its answer to the most recent complaint. In addition to never owning the property or controlling the premises, Meijer, Inc. represents to the Court that it never employed any individuals who worked at the store, and Plaintiff never inquired during discovery as to what entity employed any of the individuals with knowledge of this case. Although Plaintiff alleges that Breanne Cichanski was the employee of all three Meijer Defendants, Meijer, Inc. has denied this allegation and MSLP has admitted that it employed Ms. Cichanski. At the summary judgment state, Defendants' evidence trumps Plaintiff's allegations.

Based on the evidence before the Court, it is undisputed that Meijer, Inc. did not own, operate, maintain, manage, or control the store in question. Thus, there is no legal basis under which Meijer, Inc. could have owed a duty to the Plaintiff. The proper Defendants are MSLP and MGLLP. Meijer, Inc. is entitled to judgment as a matter of law.

### B. Premises Liability

A common hazard encountered by retail store owners is a spill on the floor. Where the floor is smooth and the customer traffic heavy, there is a danger that spills caused by employees or customers can precipitate an injurious fall. *Peterson v. Wal-Mart Stores, Inc.,* 241 F.3d 603, 604 (7th Cir. 2001). "The store's duty is not merely to prevent careless spillage by its employees but also to be on the lookout for spillage by whomever caused and to clean it up promptly." *Id.* Accordingly, a business can be liable for a customer's slip on a spilled substance in certain instances. See, *e.g.*, *Holbrook v. Casey's General Stores, Inc.*, 2009 WL 2488297, at *2 (S.D. Ill. Aug. 13, 2009). As set forth previously, in a "slip and fall" case such as this one, Illinois

state and federal courts apply Illinois premises liability law.

"In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." *Reid v. Kohl's Dep't Stores, Inc.,* 545 F.3d 479, 481 (7th Cir. 2008) (citations omitted). However, a business owner is not an insurer of the safety of its premises, and a plaintiff must adduce a triable negligence case to avoid summary judgment. *Tomczak v. Planetsphere, Inc.,* 735 N.E.2d 662, 668 (Ill. App. Ct. 2000). "Liability can be imposed when a business's invitee is injured by slipping on a foreign substance on its premises if the invitee establishes that the business had actual or constructive notice of the dangerous condition that caused the fall." *Id.* (citing *Pavlik v. Wal–Mart Stores, Inc.,* 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001); *Tomczak v. Planetsphere, Inc.,* 735 N.E.2d 662, 666 (Ill. App. Ct. 2000).

Here, Plaintiff concedes that insufficient evidence exists to infer that Meijer employees caused the brown substance to be on the floor or had actual notice that the substance was on the floor. Thus, the issue is whether Meijer had constructive notice of the substance, such that liability could be imposed. Meijer contends that Plaintiff fails to present any evidence that establishes how long the substance was on the floor before Plaintiff stepped on it and fell. Plaintiff argues that there is a genuine issue of material fact with respect to constructive notice.

To determine whether constructive notice is established because of the presence of the spill for a period of time, courts examine both the length of time the spill existed and the surrounding circumstances. *Reid,* 545 F.3d at 843; *Peterson,* 241 F.3d at 605. "Where constructive knowledge is alleged, '[o]f critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered.' " *Reid*, 545 F.3d at 481–482 (quoting *Torrez v. TGI Friday's, Inc.,* 509

F.3d 808, 811 (7th Cir. 2007)). In *Hresil,* the Illinois Appellate Court held as a matter of law that the presence of a phlegm-like substance on the floor in the women's clothing department of an uncrowded self-service retail department store for ten minutes, as a matter of law, did not amount to constructive notice. *Hresil,* 403 N.E.2d at 680. Similarly, in *Reid,* the Seventh Circuit held that a milkshake, spilled on the floor of an uncrowded department store that did not sell milkshakes within ten minutes before a customer slipped on it, did not put the store on constructive notice of the spill. *Reid,* 545 F.3d at 843. *Hresil* and *Reid* do not, however, establish a ten-minute bright-line rule; those cases turned on the particular circumstances of each case. See *id.; Peterson,* 241 F.3d at 605.

Viewing the evidence in the light most favorable to Plaintiff, as the Court must do, Meijer employees were expected to inspect and clean the store's floor throughout the day, including the section of the floor located in the bakery department. Evidence in the record supports an inference that the defective condition was such that it would have been easily noticed if an employee had inspected the floor. And, as set forth in detail below, a Meijer employee was standing in direct proximity to the dangerous condition, admitted she had an ongoing duty to inspect and clean the floors, failed to inspect when she went back out on the floor after being off of it for some time, and failed to notice, remedy, or warn Plaintiff of the condition.

Breanne Cichanski started her shift on the day of the accident as the only person in the bakery department working the noon-to-five shift. Cichanski acknowledged that she had an initial and ongoing duty to inspect and clean the bakery floor where customers shopped, in addition to her other duties, which included baking, packaging product, putting trays into the dishwasher, and preparing the daily planner. Although Cichanski testified that she had last checked the floor 20 minutes prior to the incident, she was unable to accurately account for the

time spent doing her activities and was unable to provide accurate percentages for the portion of her work day related to the duties she performed. In other words, because Cichanski's calculation of her time during the day doesn't add up, it could cause a reasonable juror to doubt or give less weight to her testimony as to when she last checked the floor. Further, during her deposition, Cichanski was asked whether she checked the floors in the bakery aisles immediately after leaving the bakery kitchen the last time before the accident took place. She responded, "Honestly, I did not check the floor before I went back out." The Court does not make credibility determinations at summary judgment. Nevertheless, Cichanski's inability to accurately account for her time and admission that she did not inspect the floor after leaving the kitchen shows the existence of a genuine issue of fact as to how long the substance could have been on the floor.

In addition to Cichanski's testimony, which supports an inference that the substance could have been on the floor for 20 minutes or longer, the record contains colorful descriptions of the substance that Plaintiff slipped on, ranging from "poo," to "feces," to a brown, muffin-like substance. The record also contains evidence that there was a muffin cart near the area where Plaintiff fell and that customers could get a glaze or chocolate topping drizzled on their muffin at the site of the muffin cart. While it may be unreasonable to expect clothing-or-department-store employees to detect a food or drink spill within 20 minutes, a reasonable jury could come to a different conclusion about a spill in a grocery store bakery. Further, a Meijer employee confirmed that he had to mop a four-to-five-foot radius because the substance appeared either to have been run over by shopping carts or stepped on and smeared around, supporting an inference that the substance could have been there for a while. Although there is no evidence that the foot traffic was "heavy," Cichanski testified that shopper traffic was "steady."

The evidence adduced supports an inference that the substance could have been on the bakery floor for some time and that it should have been noticed and remedied by at least one employee who had an ongoing duty to inspect and clean the floor. (Of course, the opposite inference also would be permissible on the current state of the factual record.) A business is not required to continuously patrol its floor and aisles on the lookout for spills, but it may be required to frequently and carefully patrol them, especially in areas where spills are likely. A bakery department, where the evidence reflects that individual bakery goods can be purchased and glazes and toppings are applied out on the floor (and not just in the kitchen), is such a place. *Peterson,* 241 F.3d at 604–05 (citing *Hresil v. Sears, Roebuck & Co.,* 403 N.E.2d 678, 680 (Ill. App. Ct. 1980)); see also *Peterson,* 241 F.3d at 604 (citing *Tomczak,* 735 N.E.2d at 667) ("The store's duty is not merely to prevent careless spillage by its employees but also to be on the lookout for spillage by whomever caused and to clean it up promptly.").

Also problematic for Defendants' theory is the undisputed fact that, at the time of the incident, Cichanski was standing at the same table into which Plaintiff fell, working on a daily planner. Cichanski testified that she felt something hit the table that they were both standing near as Plaintiff fell. Cichanski, like Plaintiff, had failed to see the substance – which Defendants maintain was "open and obvious" – in spite of the fact that she was in close proximity to the substance for longer than Plaintiff.

Under Illinois law, "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Buchaklian v. Lake County Family YMCA,* 732 N.E.2d 596, 600 (Ill. App. Ct. 2000) (citing *Bucheleres v. Chicago Park District,* 665 N.E.2d 826 (Ill. 1996)); see *Ward v. K Mart Corp.,* 554 N.E.2d 223, 230 (Ill. 1990) ("Certainly a condition may

be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition."). "For a condition to be open and obvious, an invitee must reasonably be expected to discover it and protect himself against it." *Buchaklian,* 732 N.E.2d at 600 (citing *Deibert v. Bauer Bros. Constr. Co.,* 566 N.E.2d 239 (Ill. 1990) and Restatement (Second) of Torts § 343A cmt. b, at 219 (1965)). "[T]he issue of whether a condition is obvious is determined by the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge." *Id.* at 602 (citation omitted)

Here, the Court cannot find as a matter of law that the substance was open and obvious. Contrary to Defendants' assertion, Plaintiff's admission that she would have seen the substance had she been looking down does not absolve Meijer of liability. See *Buchaklian,* 732 N.E.2d at 602 ("It is this court's opinion that summary judgment is not proper when reasonable minds could differ as to whether a condition was open and obvious and that such a determination involves a finding of fact even when a plaintiff admits that he or she could have seen the condition if he or she had looked."). Indeed, the "obviousness" of a condition or "[w]hether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact." *Ward,* 554 N.E.2d at 234. "Where there is no dispute about the physical nature of the condition, whether a danger is open and obvious is a question of law." *Choate v. Ind. Harbor Belt R.R.,* 980 N.E.2d 58, 67 (Ill.2012). "However, where there is a dispute about the condition's physical nature, such as visibility, the question of whether a condition is open and obvious is factual." *Wilfong v. L.J. Dodd Constr.,* 930 N.E.2d 511, 520 (Ill. App. Ct. 2010). Here, the visibility of the substance is in dispute. While Plaintiff admits that she could have seen the

11

substance had she been looking for it, she testified that she was near a table and was shopping, not looking at the floor for spills. And, as set forth above, even the Meijer employee working nearby claims not to have noticed the spill prior to Plaintiff slipping on it.

The cases that have found no dispute about the physical nature of a condition differ from this incident. See, *e.g., Belluomini v. Stratford Green Condo. Ass'n,* 805 N.E.2d 701, 707 (Ill. App. Ct. 2004) (no dispute that plaintiff saw bicycle before she tripped over it); *Bucheleres,* 665 N.E.2d at 835–36 (no dispute about danger of diving from concrete seawalls into Lake Michigan); *Sollami v. Eaton,* 772 N.E.2d 215, 222–23 (Ill. 2002) (no dispute about physical danger of "rocket jumping" onto a trampoline). On the other hand, where plaintiffs have failed to notice a condition prior to slipping or tripping, courts consistently have found the open and obvious issue to be a question of fact. See, *e.g., Hamilton v. Target Corp.*, 2013 WL 6050441, at *3 (N.D. Ill. Nov. 15, 2013) (denying summary judgment and concluding that a genuine dispute existed as to whether puddle of water was an open and obvious condition); *Ward v. KFC Corp.,* 2009 WL 497902, at *2, n.1 (N.D. Ill. Feb. 25, 2009) (where plaintiff claimed he did not see puddle of water before slipping, whether puddle was an open and obvious hazard was a disputed question of fact); *Buchaklian,* 732 N.E.2d at 601–02 ("We determine in this case that, where plaintiff was an invitee and had to walk over a mat in order to utilize the YMCA pool facilities, and where plaintiff may not have seen a defect in the mat before she tripped, genuine issues of material fact exist as to whether the defect in the mat was an open and obvious danger that plaintiff should have seen.").

Finally, Plaintiff contends that even if the substance was open and obvious, the distraction exception applies. "Under the distraction exception, a possessor of land can be held liable for injuries caused by an open and obvious hazard if the possessor should have anticipated

the harm despite the condition's obviousness." *Savage v. Ritchie Bros. Auctioneers (Am.), Inc.,* 2012 WL 1520710, at *3 (N.D. Ill. Apr. 30, 2012) (citing *Ward,* 554 N.E.2d at 231). Harm can be anticipated when there is "reason to expect that the invitee's attention will be distracted, as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned." *Bucheleres,* 665 N.E.2d 826 at 834 (citation omitted). Plaintiff was at Meijer to shop and was headed toward the chicken products when she fell. It's not a stretch to say that a customer at a grocery store may not be canvassing the ground for spills, but instead might be distracted by finding the items on her grocery list.

In sum, in light of the particular facts of this case, a reasonable jury could find that Defendants had constructive notice of the spill on which Plaintiff slipped. The record supports an inference that the spill may (or may not) have been there for 20 minutes or more. Further, the risk of spills in the bakery, particularly with the presence of food carts, was substantial, and a Meijer employee was standing in close proximity to the spilled substance. A reasonable jury could find that Meijer, exercising ordinary care, should have detected the spill and cleaned it up—or at least warned patrons about it.

## IV. Conclusion

For these reasons, the Court grants in part and denies in part Defendants' motion for summary judgment [42]. The Court dismisses Plaintiff's claims as to Meijer, Inc. and denies the motion in all other respects. This case is set for further status hearing on 1/22/2014 at 9:00 a.m.

Dated: December 23, 2013

Robert M. Dow, Jr.
United States District Judge

13